UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA A. SEILER,

               Plaintiff,                     Case No. 2:16-cv-13541
                                          District Judge Corbett O'Meara

v.                                       Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 14) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 18)

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 18),

and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

       Plaintiff, Patricia A. Seiler, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for social security disability insurance

(DI) benefits. This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

14), the Commissioner's cross motion for summary judgment (DE 18), and the administrative record (DE 12).

### A.  Background

Plaintiff filed her application for DI benefits on September 26, 2013, alleging that she has been disabled since January 1, 2012.  (R. at 130-37.) Plaintiff's application was denied, and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 75, 86-89.)  ALJ Patricia S. McKay held a hearing on May 11, 2015 — at which Plaintiff was represented by counsel. (R. at 27-74.)  The ALJ considered all of the evidence and determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 10-22.)  On August 17, 2016, the Appeals Council denied Plaintiff's request for review.  (R. at 1-5.)  Thus, ALJ McKay's decision became the Commissioner's final decision. Plaintiff then timely commenced the instant action on October 3, 2016. (DE 1.)

### B.  Plaintiff's Medical History

Plaintiff's combined medical records span the period from September 30, 2011 through May 19, 2015.  (R. at 201-452.)  The 251 pages of medical records are mostly comprised of hospital and treatment records and diagnostic tests, and include a January 18, 2014 consultative examination by Dr. Alexander Lund. These records will be discussed in relevant part as necessary below.

**C.     Hearing Testimony**

Plaintiff and vocational expert Kelly Stroker testified at the August 27, 2015

hearing before ALJ McKay.  (*See* R. at 27-74.)  The hearing testimony will be

discussed as necessary below.

**D.     The Administrative Decision**

On September 12, 2015, ALJ McKay issued an "unfavorable" decision.  At

**Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff has not

engaged in substantial gainful activity since the alleged onset date of January 1,

2012.  (R. at 15.)  At **Step 2**, the ALJ found that Plaintiff has severe pulmonary and

orthopedic impairments, which are discussed in detail below.  (R. at 15-17.)  At

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4),
416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's
review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully
considered, the sequential review considers and answers five questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet
     or equal the criteria of an impairment set forth in the Commissioner's
     Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the
     claimant perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and
     residual functional capacity, can the claimant perform other work
     available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573
F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

**Step 3**, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 17.)  Prior to **Step 4** of the sequential process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC")[2] to:

> perform sedentary work … except that she: is limited to occasional climbing of stairs, crouching, crawling, kneeling, stooping/bending; must avoid workplace hazards such as moving machinery, unprotected heights, and climbing ladders, ropes, and scaffolding; and must avoid continuous exposure to pulmonary irritants.

(R. at 17-21.)  At **Step 4**, the ALJ concluded that Plaintiff is capable of performing past relevant work as a legal secretary, as it is generally performed, and that she therefore is not disabled.  (R. at 21-22.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").  Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability."  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997));

*see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security

as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

Plaintiff raises three issues.  First, she argues that "the ALJ erred when she

failed to find that Plaintiff's depression and anxiety were severe impairments in her

Step Two analysis."  (DE 14 at 16-20.)  Second, she contends that "the ALJ failed

to create an accurate RFC assessment and therefore erroneously found work at

Steps Four and Five."  (*Id.* at 20-23.)  Third, she alleges that "the ALJ made an

erroneous credibility determination."  (*Id.* at 23-24.)  I will address each argument

in turn.

### 1.    The ALJ's Step 2 Findings

At Step 2 of her analysis, the ALJ determined that Plaintiff had the

following severe impairments:  interstitial lung disease (hypersensitivity

pneumonitis); degenerative disc disease of osseous structures; and,

osteoarthritis/degenerative joint disease of bilateral knees (status post total left knee arthroplasty); however, she also found that a number of other conditions mentioned in Plaintiff's medical records did not "cause[] significant work-related limitations that lasted 12 months" and therefore were not severe.  (R. at 15-17.) The ALJ specifically addressed Plaintiff's complaints of depression and anxiety and found that her "medically determined impairment of depression/anxiety does not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore nonsevere."  (R. at 16.)  Plaintiff argues that the ALJ erred when she did not find that Plaintiff's depression and anxiety were severe impairments in her Step 2 analysis.  (DE 14 at 16-20.)  She complains that the ALJ failed to consider objective medical evidence from her physicians, Drs. Marilyn B. Goldman and Melinda Kakish, indicating that she was diagnosed with depression and anxiety, as well as her hearing testimony in making the Step 2 finding.  (*Id.*)

### a.      Standard for a Severity Determination

In the Sixth Circuit, "the severity determination is 'a *de minimis* hurdle in the disability determination process.'"  *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862.  The test is used to "screen out totally groundless claims."

*Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).

However, Sixth Circuit precedent readily establishes that failure to find an

impairment severe at Step 2 of the sequential analysis is not reversible error if the

ALJ found another impairment severe and thus continued with the five-step

evaluation.  *See e.g., Fink v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007);

*Anthony*, 266 F. App'x at 457.  "The fact that some of [the plaintiff's] impairments

were not deemed to be severe at step two is therefore legally irrelevant."  *Anthony*,

266 F. App'x at 457; *accord Dickey-Williams v. Comm'r of Soc. Sec.*, 975

F.Supp.2d 792, 822-23 (E.D. Mich. 2013) ("any alleged omission from the list of

severe impairments does not undermine the ALJ's decision" so long as the ALJ

considers plaintiff's "severe and nonsevere impairments in the remaining steps of

the sequential analysis") (citation omitted).  As more fully discussed in subsection

2 *infra*, addressing the ALJ's RFC analysis, the ALJ expressly stated that she

arrived at the RFC "[a]fter careful consideration of the entire record" and that she

"considered all symptoms and the extent to which these symptoms can reasonably

be accepted as consistent with the objective medical evidence and other evidence."

(R. at 17-18.)  Consequently, any alleged omission of depression/anxiety from the

list of severe impairments does not undermine the ALJ's decision, and Plaintiff's

argument fails.

### b.    Substantial Evidence Supports the Step 2 Determination

8

In any event, I find that the ALJ's Step 2 determination is supported by substantial evidence.  The ALJ expressly acknowledged that Plaintiff's depression/anxiety was a medically determinable mental impairment, but found that it "does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and therefore is nonsevere." (R. at 16.)  The ALJ thoroughly reviewed and considered the medical evidence of record, Plaintiff's Function Report submitted in connection with her claim for disability benefits, and her testimony, in determining that she did not have a severe mental impairment.  (*Id.*)  The ALJ noted that there is no indication from the treatment records showing that Plaintiff suffered from any functional impairment related to these conditions (R. at 16, 258, 402), and that Plaintiff did not allege any mental issue affecting her activities in the function report she submitted in support of her claim for benefits.  (R. 16, 167-74.)  In that report, Plaintiff stated that she had no problems with personal care, she spends time with others, has no problems getting along with family, friends or neighbors, that her conditions do not affect her memory, ability to complete tasks, concentration, understanding, following instructions, and getting along with others, and that she can pay attention for the "average length" of time, follow spoken instructions "very well," gets along with authority figures "very well," handles changes in routine "alright" but that she handles stress "poorly." (R. at 167-74.)  She also does not need encouragement to

9

do house or yard work.  (R. at 169.)  The ALJ also noted: Plaintiff does not treat

with a specialist; she agreed to therapy in May 2015 but never attended; she had a

past history of depression and anxiety but no recent psychiatric symptoms; and,

that the State DDS medical consultant, Rom Kriauciunas, Ph.D., opined that

Plaintiff had no more than mild limitations due to any mental impairment. (R. at

16, 81, 402, 410, 437-38.) The ALJ appropriately relied on the opinion of the State

agency medical consultant. *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26,

32 (6th Cir. 2009) (an ALJ may properly rely on the opinions of a reviewing State

agency medical consultant); *see also* 20 C.F.R. § 404.1527(f)(1). Plaintiff has not

challenged the ALJ's reliance on this opinion.

In support of her argument, Plaintiff cites to treatment notes from her

doctors in which she had been diagnosed with anxiety and depression (DE 14 at

17-18, citing R. at 327, 402-04, 411), but there is no indication in those records

that Plaintiff suffered from any functional limitations related to those impairments.

Instead, Plaintiff appears to focus on the diagnoses of these conditions.  However,

it is well settled in the Sixth Circuit that "the mere diagnosis of an impairment does

not render an individual disabled nor … reveal anything about the limitations, if

any, it imposes upon an individual."  *See McKenzie v. Comm'r of Soc. Sec.*, No.

99-3400, 2000 WL 687680, at *5 (6th Cir. May 19, 2000); *see also Higgs v.*

*Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [a condition], of

10

course, says nothing about the severity of the condition.").  Rather, as Step 2, Plaintiff must show that the conditions not deemed "severe" significantly limit her ability to do basic work activities, which she has not done here.

### c.    Weighing the Opinions of Plaintiff's Physicians

Plaintiff also contends that both of her physicians, Drs. Goldman and Kakish, indicated that depression and anxiety affected her conditions. (DE 14 at 17-18, citing R. at 321, 359).  However, the ALJ thoroughly reviewed and evaluated both of the physical residual functional capacity questionnaires completed by these physicians and afforded them little weight. (R. at 19-21.)  As the Commissioner correctly points out, Plaintiff makes no challenge to the ALJ's assessment of the medical opinion evidence from these doctors, and accordingly, any such arguments are deemed waived.  *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

### i.    Dr. Goldman

The ALJ gave Dr. Goldman's opinion—based on three total office visits— little weight.  (R. at 19-20.)  She noted that the doctor's assessment of Plaintiff's depression, anxiety and post-traumatic stress disorder (PTSD) was "outside the scope of treatment," was "wholly based on [Plaintiff's] descriptions," that "Dr. Goldman's own treatment records fail to account for the overly burdening limitations contained in his opinion," and that "the medical records from other

11

treating sources fail to account for them as well." (R. at 19-20, 361, 374, 401-404, 408, 438.)  The ALJ further found that Dr. Goldman's opinion is "inconsistent with [Plaintiff's] own statements and overall health at the time of the opinion," specifically noting that Plaintiff requested disability papers from Dr. Goldman on May 19, 2015, complaining of knee pain, even though she reported 13 days earlier to another doctor that she rarely needed pain medication because she only experienced 1 out of 10 pain levels, and despite the fact that Dr. Goldman's office chart documented only mild to normal clinical findings.  (R. at 20, 374, 410.)

### ii.  Dr. Kakish

The ALJ similarly gave Dr. Kakish's opinion little weight, finding it "very peculiar that [Plaintiff] would have so many restrictions based solely on bilateral knee pain, as [sic] indicated as the only listed physical impairment/syndrome."  (R. at 20-21, 318-21.)  The ALJ further noted that Dr. Kakish had not seen Plaintiff in six months prior to rendering her opinion, and although Plaintiff complained at that time of swollen hands and feet, her exam was unremarkable aside from mild tenderness and pitting edema. (R. at 21, 235-36, 268-69.)  Prior records concerned symptoms for cold/pneumonia/lung disease and musculoskeletal and neurologic examinations were negative in May, June and July 2013, and there were no office visits between February 2012 and May 2013.  (R. at 21, 241, 245, 270, 273, 282.)

The ALJ's assessments of Drs. Goldman's and Kakish's opinions are well-stated and supported by substantial evidence.

Accordingly, because the ALJ found other impairments to be severe and thus continued with the five-step evaluation, whether Plaintiff's anxiety/depression are deemed to be severe is "legally irrelevant."  *See Anthony*, 266 F. App'x at 457. But, in any event, substantial evidence supports the ALJ's Step 2 determination that Plaintiff's mental impairment was not severe.

## 2.    The ALJ's RFC Determination

Plaintiff argues that the ALJ's RFC assessment "falls short of including the entirety of Plaintiff's documented limitations," and the ALJ thus made an erroneous Step 5 determination that Plaintiff could perform past work.  (DE 14 at 20-23.)  Although Plaintiff purports to frame this as a challenge to the ALJ's Step 5 determination, because the hypothetical posed to the vocational expert in this matter is essentially identical to the RFC, this is in reality a "veiled attack" on the ALJ's underlying RFC finding.  *See Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed"); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is essentially

13

to partially shift the burden of proof required of a claimant at step four to the

Commissioner.").

Turning to the RFC assessment, a plaintiff's RFC is "the most a claimant

can still do despite the physical and mental limitations resulting from her

impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009);

s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of Plaintiff's

RFC is an issue reserved to the Commissioner and must be supported by

substantial evidence.  20 C.F.R. §§ 404.1527(e), 416.927(e).  "'ALJs must not

succumb to the temptation to play doctor and make their own independent medical

findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009)

(citation omitted).  Pursuant to Social Security Rule 96-8p, the RFC assessment

must include:

> [A] narrative discussion describing how the evidence supports each
> conclusion, citing specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations).   In
> assessing RFC, the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work setting on a
> regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or
> an equivalent work schedule), and describe the maximum amount of
> each work-related activity the individual can perform based on the
> evidence available in the case record. The adjudicator must also
> explain how any material inconsistencies or ambiguities in the
> evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a

'function-by-function evaluation' to determine a claimant's RFC, case law does

14

not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002). Instead, the ALJ "'need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id.* (citations omitted).

### a.   Mental Health Issues

Plaintiff argues that the ALJ failed to include in the RFC "limitations caused by her depression and anxiety, which include a lack of concentration and being off task," as well as a sit/stand option, but she offers little in support for her argument. (DE 14 at 20-23.) Contrary to the Plaintiff's contention, I find that the ALJ's RFC is supported by substantial evidence. The ALJ stated that she carefully considered the "entire record" including "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence or other evidence." (R. at 16-18.) A review of the ALJ's decision demonstrates that she sufficiently "'articulate[d] how the evidence in the record supports the RFC determination, discuss[ed] the claimant's ability to perform sustained work-related activities, and explain[ed] the resolution of any inconsistencies in the record.'" *See Delgado*, 30 F. App'x at 547; *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n

15

ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).

First, the ALJ adequately considered Plaintiff's depression and anxiety in her decision. As explained above, the ALJ found that Plaintiff's "medically determinable mental impairment of depression/anxiety does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (R. 16.) The ALJ thoroughly reviewed and considered the medical evidence of record, Plaintiff's function report, and her testimony, and observed that there is no indication from the treatment records showing that Plaintiff suffered from any functional impairment related to these conditions. (R. at 16, 258, 402.) *See Gier v. Comm'r of Soc. Sec.*, No. 15-12792, 2017 WL 1129913, at *11-14 (E.D. Mich. Jan. 12, 2017) (substantial evidence supported RFC that did not incorporate any mental limitations where the mental condition was found to be "severe" but only manifested mild limitations), *report and recommendation adopted by*, 2017 WL 1090976 (E.D. Mich. Mar. 23, 2017). Tellingly, Plaintiff did not allege any mental issue affecting her activities in her function report, other than becoming anxious in stressful situations (R. 16, 167-74), and while Plaintiff argues that both of her physicians, Drs. Goldman and Kakish, indicated that depression and anxiety affected her conditions (DE 14 at 17-18, citing R. at 321, 359), as explained above, the ALJ thoroughly reviewed and

16

evaluated both of these physician's opinions and properly afforded them little weight. (R. at 19-21.)  The ALJ noted that Dr. Goldman's assessment of Plaintiff's depression, anxiety, and PTSD were "wholly based on [Plaintiff's] descriptions." (R. at 19, 361.)  The ALJ further found that "Dr. Goldman's opinion is not only unsupported by the medical evidence of record including her own treatment records, but also inconsistent with the claimant's own statements and overall health at the time of the opinion."  (R. at 20.)  The veracity of this last observation is evident from even a casual perusal of Plaintiff's function report.  (R. at 167-74.)

Similarly, the ALJ properly afforded little weight to Dr. Kakish's opinion. (R. at 20-21, citing 381-22.)  The ALJ observed that Dr. Kakish's extreme opinion was not supported by her limited treatment records six months prior to her opinion, which show she saw Plaintiff for swollen hands and feet in September 2013, and which were unremarkable aside from mild tenderness and pitting edema.  Dr. Kakish previously saw Plaintiff only for symptoms of cold/pneumonia/lung disease, and the ALJ noted that there were no office visits between February 2012 and May 2013.  (R. at 20-21, citing 270, 273, 282.)  The ALJ instead properly relied on the opinion of the State agency psychological consultant, Dr. Kriauciunas, who found that Plaintiff had no more than mild limitations due to any mental impairment. (R. at 16, 81).  *See McGrew*, 343 F. App'x at 32; *see also* 20 C.F.R. § 404.1527(f)(1).  As the Commissioner correctly points out, Plaintiff

17

makes no challenge to the ALJ's assessment of the medical opinion evidence from these doctors, and accordingly, any such arguments are deemed waived. *See Hollon*, 447 F.3d at 491.

### b.     Sit/Stand Option

With regard to Plaintiff's claimed need for a sit/stand option, she argues that both of her physicians indicated that she cannot sit for extended periods of time (R. at 320, 362), that during the hearing she needed to stand up because of her knee pain, and that the only way to alleviate pain is to lie down or elevate her legs. (DE 14 at 22, citing R. at 47, 60.) As explained above, the ALJ appropriately afforded little weight to the opinions of these physicians and the ALJ's credibility determination is supported by substantial evidence. Further, the ALJ properly gave significant weight to the January 2014 opinion of State agency physician, B.D. Choi, M.D., that Plaintiff can perform sedentary exertional work. (R. 19, 82-83.) *See McGrew*, 343 F. App'x at 32; *see also* 20 C.F.R. § 404.1527(f)(1). Plaintiff does not challenge this determination. The ALJ noted that "[e]ven though the claimant has difficulty ambulating and a limited range of motion in the knees, [Dr. Choi's] opinion is accommodating because it only requires her to stand/walk two hours in a workday while only occasionally performing postural activities." (R. at 19.) The ALJ further stated that "there is nothing in the objective findings showing difficulty sitting for long periods, consistent with complete sedentary work." (R. at

18

18, citing 235-36, 264, 313-18.)  A claimant must do more than show she is severely impaired; the impairment must result in functional limitations.  *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011).  In sum, although Plaintiff points to evidence in her favor, the ALJ does too, and the conclusions she reaches are within the "zone of choice" provided those in her position.  *See Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Accordingly, the RFC assessment is supported by substantial evidence.

### 3.    Plaintiff's Credibility

Plaintiff argues that the ALJ's credibility finding "erroneously dismisses Plaintiff's credibility based on a boilerplate determination that was result-oriented."  (DE 14 at 23-24.)  Plaintiff asserts that she has an "excellent work history, which infers that if [she] could work, she would work[,]" and complains that the ALJ "cherry-picks an isolated incident of travel for a reason to discount credibility."  (*Id.*; *see* R. at 235, 264.)  But the ALJ hardly rested her credibility assessment on air travel alone, having much more to work with than that.

I conclude that the ALJ's credibility assessment ─ which took into consideration, *inter alia*, Plaintiff's statements in her functional report, her hearing testimony, and inconsistencies between the medical record and Plaintiff's complaints (R. at 16-21) ─ is supported by substantial evidence.  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses,

including that of the claimant." *Rogers*, 486 F.3d at 247.  A review of the ALJ's

decision reveals that she thoroughly reviewed Plaintiff's testimony and the record

evidence.  (R. at 16-21.)  The ALJ's "assessment of credibility is entitled to great

weight and deference, since he [or she] had the opportunity to observe the

witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008).

It is for this reason that the ALJ's credibility findings have at times been

characterized as "unchallengeable." *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x

109, 113-14 (6th Cir. 2010); *see Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536

(6th Cir. 2001) ("A circuit court ... may not review a determination of credibility.

It is for the Secretary and his examiner, as the fact-finders, to pass upon the

credibility of the witnesses and weigh and evaluate their testimony.") (alteration

omitted).  Moreover, "[d]iscounting credibility to a certain degree is appropriate

where an ALJ finds contradictions among the medical reports, claimant's

testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525,

537 (6th Cir. 1997).

Plaintiff ignores the ALJ's extensive and considered analysis of the record

evidence and Plaintiff's own testimony, and the inconsistencies in her subjective

symptoms.  The ALJ noted that nothing in the objective findings supports an

extreme difficulty sitting for long periods (R. at 18, 235-36, 264, 313-17), and that

while Plaintiff testified she spent most of her days sleeping, there was nothing to

objectively verify that statement or to show that she takes the medicine she identifies as "knock[ing] her out[.]"  (R. at 19.)  Although Plaintiff takes issue with the ALJ's reference to "several references to prolonged air travel in September 2013" (R. at 18, 235-36, 264), the ALJ did not misstate that evidence but instead appropriately considered it in assessing Plaintiff's and her physicians' claims that she was unable to sit for long periods of time.  (R. at 18.)  Plaintiff also ignores the ALJ's statement that:

> *What is most telling and peculiar* is that the claimant requested these disability papers from Dr. Goldman on May 19, 2015, even though it was only 13 days after she reported to another physician that she rarely needed pain medication because she only experienced 1 out of 10 pain levels.  Additionally, at this office visit with Dr. Goldman, the claimant reported achy pain of 3 out of 10 in the left knee and 5 out of 10 in the right knee (8 out of 10 when standing and walking) (12F/11).  *Based on this extreme inconsistency and the overall lack of supporting evidence, the claimant's allegations are discounted and Dr. Goldman's opinion is given little weight.*

(R. at 20 (emphasis added).)  Finally, I note that the ALJ did credit Plaintiff's statements in formulating the RFC by incorporating "additional limitations based on evidence presented at the hearing level, including [Plaintiff's] testimony (i.e., avoid hazards and pulmonary irritants)."  (R. at 19.)

Accordingly, I find that the ALJ's credibility determination is supported by substantial evidence.

**G.     Conclusion**

In sum, the ALJ's opinion is clear and well supported.  Accordingly, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 14), **GRANT** Defendant's motion for summary judgment (DE 18),

and **AFFIRM** the Commissioner of Social Security's decision.

## III.     PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 1, 2018           s/Anthony P. Patti
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on February 1, 2018, electronically and/or by U.S. Mail.

                                   s/Michael Williams
                                   Case Manager for the
                                   Honorable Anthony P. Patti

23